Next case is Fisher against Warden. This is case number 22-2846. And I would just add, Your Honors, and Your Honor, Judge Rendell, you said this, but I think that the Second Circuit got this exactly right in Kean when it said it would strain credulity to think that the Supreme Court would prohibit district courts from engaging in a fact-specific analysis for purposes of statute of limitations but then turn around and allow them to do that exact analysis in regard to tolling and revival provisions. Owens didn't say anything about tolling and revival, correct? It did not, Your Honor. Do you have any precedent to help us as to what we can or can't borrow in those areas, recognizing that when it comes to the SOL, we're dealing strictly with the general? Right. So closely related tolling provisions, right? Closely related tolling provisions apply to 1983 actions. Now, the Supreme Court did not define exactly what closely related meant, but the Supreme Court in Kean said, We'll tell you what closely related means. It means if it applies to all of the claims within the general residual personal injury statute of limitations, which was the case in Hardin. Again, that was about who the plaintiff was. So if you took that tolling provision, it fits in squarely with what we're arguing. If the Supreme Court passed, excuse me, the New Jersey legislature passed a statute that tolled claims for prisoners, that would apply here, because that does not require the court to engage in a tort-specific factual analysis that's prohibited by Wilson. But there's no precedent directly preventing us from applying a different rule to revival statutes than we would apply to statute of limitations. Is it your argument that it would just be counterintuitive to do it, even though there's nothing that says we can't do it? Correct, Your Honor. It would be counterintuitive. And counterintuitive, I believe, is the exact language that the Ninth Circuit used in addressing this issue. What would be so bad as a policy matter? What would be the adverse downstream consequences if we were to do the counterintuitive thing? The problem, Your Honor, is that it explicitly violates the directive from Owens v. Acure, which is that in 1983 actions, courts should no longer do this tort-specific analysis. And what the court was getting at in Wilson was up until that point, in order to get a more favorable statute of limitations, the plaintiffs were arguing, well, look, my case is really more like a property claim, or it's more like a contract. I'm going to go into the gist of the action doctrine here in these cases, I guess. That's the risk? That's the risk. And the court specifically said, both in Wilson and then again in Owens, it wanted to create uniformity. It wanted to create uniformity among all 50 states. And so that is what, you know, that's the issue here. For the court to go against that and state that 2A-14-2B would apply, it would be directly, it would require this court to do that kind of analysis. That is prohibited. And admittedly. From a predictive standpoint, I could see the Supreme Court looking at this and saying, you know, 27 states have enacted these provisions. This is different from Owens. There's no factual analysis here required. These are recognized specific sexual, you know, sexual assault. Pretty clear. There's no analysis necessary here. We are going to carve this out and say you can have a 1983 action. To deprive representative, deprive states that have said you can bring these actions from having a defendant against a federal official is just wrong. Could you see that from a predictive standpoint? I can, Your Honor. But here's the problem. What will wind up happening. So I will say this. I think at the moment, the, well, I'll say this. The appellant is only arguing that this specific tolling provision applies. Right? But were the New Jersey legislature tomorrow to turn around and pass tolling provision stating that any prisoner who's bringing a failure to protect claim is entitled to an additional tolling, additional period of tolling. We would be, the court would be faced with two, just like it was in Wilson, and just like it was in Owens, two potentially applicable tolling provisions that the court would then have to sit down and determine which of these tolling provisions should apply. And that is where we get right back to the court's analysis in Owens and in Wilson. Because there were all these conflicting and potentially applicable statutes of limitation, they wanted to create uniformity. So that would be the issue, Your Honor. Do we get to the question of whether there is a Bivens plan? There was nothing decided in the district court at all in the case law that where there's qualified immunity, they say, well, the district court obviously had to decide whether there was a claim. But here we have nothing decided by the district court. Do we even go there? No, Your Honors. Do not need to address the Bivens issue. Your Honors can simply affirm the district court holding, finding that NJSA 28142B does not apply to the plaintiff's claims, just like the second, ninth, and tenth circuits have held. And further, that the appellant is not entitled to equitable tolling for the reasons that the court held below. So the court need not reach the Bivens issue. All right. But assume for a minute that they're timely. If they're timely or if we don't want to run the risk of saying that they're untimely and we're wrong, it might be another reason to address Bivens. What's your best argument there? So my best argument there, Your Honor, is that in Egbert, well, let me take a step back. In Bistrian, where this court recognized that farmer continued to be an active cause of action, this court gave two lines of reasoning for why farmer remained viable. Number one was that this court said, well, farmer's never been overruled. But Egbert directly undermines that. In Egbert, the Supreme Court considered the Hartman case, which was a case in which it had assumed a First Amendment cause of action under Bivens, but never did a Bivens analysis, which is exactly what happened in Farmer. In Farmer, the court assumed a cause of action. And in Egbert, the Supreme Court said, we assumed a cause of action, but we never held that there was a cause of action. And that analysis applies directly to Farmer and to this court's holding in Bistrian. The second line of reasoning in Bistrian was this court said, well, the Supreme Court may not be listing Farmer in its three Bivens causes of action, but it sees Farmer as being indistinct from Carlson. That was what the court said. But as my friend pointed to in Gee, this court said, we have failed to extend Bivens in a number of circumstances, but we did extend Bivens in Bistrian. And so this court acknowledged that Bistrian was an extension of the Bivens doctrine. He was decided after Egbert, wasn't it? It was, Your Honor. That's exactly right. But by acknowledging that it had extended Bivens, that means that the court would have to do an analysis and determine whether that cause of action continues to exist. And as this court noted in Gee, Egbert tells us that almost parallel circumstances are not enough. The court needs only one reason, one reason not to extend Bivens any further. And I think that given, as we've stated extensively in our brief, given the court's extremely strong language in Egbert that has dramatically reduced the Bivens field, I don't see how the court can continue to acknowledge Farmer as a cause of action. If the court has no further questions, I'm happy to cede my last minute or two. Do we have to ignore or distinguish some of their later cases, then, if we're to find out that you're under, if the court were to find that Farmer were no longer a viable cause of action? I don't think so, Your Honor. I think that, well, this court has said in MacBee Yost and, again, in Bistrian that whenever there is, I'm sorry, that Abbasi had made clear, that whenever lower courts were relying on their own Bivens precedent, that they can no longer do so to recognize a Bivens remedy. And so that would apply here. I think that the court can state that Egbert has abrogated its holding in Bistrian and in Shorter. And the court need not go any further than that. Judge Reddell, anything further for Ms. Juneau? Maybe just a comment on where the conduct contributed. She was actively misled, potential inducement. Why don't these threats seek and find you? We're going to make trouble for you if you do something. Why isn't that enough? Well, two points, Your Honor. First of all, the appellant has not alleged that any of the four named defendants engaged in trickery or induced her not to file suit. That's number one. It was an unnamed party who's never been a named defendant. Number two, though, and this is most important, the allegations simply do not support a finding of equitable tolling under any of the case law that the appellant has cited. Appellant has looked to, for example, Dunn, which was a state of New Jersey case in which the court found that equitable tolling was warranted as a result of trickery. But in that instance, the defendant, a police officer, actually withheld his identity from the plaintiff so she couldn't bring suit. Very different from here. The plaintiff knew who the defendant was, knew she had been raped, and was able to bring suit. And then similarly, this court in Fraser v. Kane rejected an equitable tolling analysis, or an equitable tolling argument. I see I'm out of time. May I? Thank you very much, Your Honor. That was a non-precedential opinion, was it not? It was. That's correct, Your Honor. But I think it's helpful because in that instance. That was Judge Sirica's opinion. So we'll say it's precedential today. But yes, in that instance, the defendant, again a police officer, had threatened the plaintiff. And this court said that that was simply not enough to rise to the extraordinary circumstances that warrant equitable tolling. And again, equitable tolling is an extraordinary remedy that is only found in extremely rare circumstances. And the district court was correct in finding that these are not those circumstances. I thank you very much, Your Honor. Thank you, Ms. Judo. Let's hear the rebuttal from Attorney Meth. Thank you, Your Honor. I have three quick points and one clarification. First, there are three independent reasons that make Ms. Rihanna's claims timely today. And the court need only reach one of those to be able to reverse and remand down to the lower court. The quick factual clarification is that most of many of the threats that were alleged in the record by Ms. Rihanna were by Captain Fitzgerald, who is a defendant in this case. And I believe just now my friend said that none of the named defendants made any threats against her. Just wanted to clarify that. Second, the point that Judge Rendell was speaking about with my friend on the other side, that it is not any harder to address who the plaintiff might be in a particular case than the type of claim that is being offered in a particular case is one that we believe is important and holds true here. And that's evidenced by the fact that the Supreme Court, in deciding the scheme of statute of limitations that was appropriate, did not require that all states have the same limitations periods or the same rules around tolling and revival and application. There's already variation built into the scheme, and the variation that would be created by this court holding that the New Jersey revival provision applies is just that same type of variation that's already been recognized. And third and finally, the list of three cases that you referenced, Judge Hardiman, in Abbasi that set the Supreme Court's parameters for what constitutes a Bistrian and Shorter. And that's not necessarily just Egbert. And this court decided Bistrian and Shorter after Abbasi, when it already knew that the Supreme Court had limited the scope of when Bivens Remedies applies. So again, Egbert does not change that world. And none of the three cases involve prisoner on prisoner violence, right? We'd have to reason by analogy if we're going to fit this case into one of  That would be true, but this court has already done so through Bistrian and Shorter. So it would just be recognizing precedent that's already true in this court. Thank you. Thank you very much, Ms. Meth. Thank you, Ms. Judo. The court will take the matter under advice. Recorded stopped.